UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | 21-CR-558 (RA) |
| NIGEL LIVINGSTON, | OPINION & ORDER |
| Defendant. | |

RONNIE ABRAMS, United States District Judge:

On April 14, 2022, Defendant Nigel Livingston pleaded guilty to possession of a firearm after having previously been convicted of a felony. In advance of Livingston's *Fatico* hearing and sentencing, the Government produced impeachment material about one of the police officers who arrested him. The disclosures included notes from the Government's interviews with this officer in which he made inconsistent statements about his recovery of the firearm and narcotics on the day of Livingston's arrest, as well as a troubling disciplinary report about an unrelated incident. At a conference with the Court on November 1, 2022, the Government stated that, in light of the newly discovered impeachment material, "it did not feel comfortable putting that officer on the stand" as a witness at the *Fatico* hearing.

Livingston has since moved to withdraw his plea on the basis of those disclosures. For the reasons that follow, his motion is denied.

## BACKGROUND

The charge in this case arises out of an incident on May 15, 2021, in which Livingston was arrested after berating an employee in a dry-cleaning store (the "employee") in the Bronx and displaying a gun to her in the process. According to the employee, Livingston became angry when she told him that his clothes were not ready, and in the course of his ensuing tirade, he approached

her and opened a black bag, revealing a dark-colored gun. Gov't Opp., Ex. 1. Terrified, the employee went to the back of the store and called the store owner's cousin, who then called the police. *Id.* It is undisputed that police officers arrested Livingston outside the store, and that during the subsequent scuffle, Livingston dropped the black bag onto the sidewalk. Shortly thereafter, a police officer recovered the black bag from a trash bin in a nearby bodega, and the bag was then delivered to the police precinct.

On August 23, 2021, Livingston was charged with one count of possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 2, and on September 8, 2021, he was indicted for the same offense. On November 11, 2021 and December 6, 2021, the Government produced discovery pursuant to Rule 16 of the Federal Rules of Criminal Procedure, and on or around March 8, 2022, the Government sent Livingston a so-called *Pimentel* letter setting forth its position regarding the application of the Sentencing Guidelines. The calculation included, among other things, a four-point enhancement for Livingston's alleged use and/or possession of the firearm in connection with another felony offense, namely, possession with intent to distribute cocaine. Gov't Opp. at 4. This proposed enhancement was based on information that came from Officer Nelson Rodriguez—who, in addition to arresting Livingston, was involved in processing the firearm—even though he was inconsistent about where the drugs were found. As discovery disclosed to Livingston pre-plea makes clear, Officer Rodriguez initially swore in a state court complaint that Livingston was carrying narcotics in his pants pocket, Def. Mot., Ex. E, while later telling the Government in June 2021 that he found the drugs in Livingston's black bag, *id.*, Ex. A.[1] Livingston was never charged with a drug-related offense.

---

[1] The Government disclosed the state court complaint and the June 2021 interview notes in late 2021, prior to Livingston's guilty plea. Gov't Opp. at 4.

On April 14, 2022, Livingston pleaded guilty to the sole count in the indictment. At his plea hearing, Livingston acknowledged that he was in possession of a Taurus G2C 9-millimeter semiautomatic handgun on the day of his arrest, and that he had previously been convicted of a felony. He denied, however, threatening the employee, stating: "I'm guilty of possession of the firearm. Everything else I never did. I paid for my ticket. I just came over there to go get my belongings. I never threatened nobody." Tr. 15:19–22. The Government summarized the evidence it would present if Livingston were to proceed to trial, including "testimony from the victim saying that she had been shown a firearm that was contained in a black plastic bag and that the person who had showed her that firearm was Mr. Livingston." Tr. 17:24–18:1. The Government stated it "would also present surveillance footage and body camera footage showing Mr. Livingston in possession of that plastic bag, and that footage would also show law enforcement officers recovering that black plastic bag and finding a firearm inside of that black plastic bag." Tr. 18:2–18:6. The Government further proffered that it would present evidence from a special agent at the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) who would testify that the firearm was manufactured outside of New York State, satisfying the interstate commerce element of the charged offense in the indictment. Tr. 17:11–15. The Court accepted Livingston's plea, finding that it was knowing and voluntary.

On October 2, 2022, four days before Livingston was scheduled to be sentenced, the Government filed its sentencing submission indicating it was seeking several enhancements, including the one related to his purported possession of narcotics in connection with the firearm. Dkt. 35 at 3–6. The next day, Livingston advised the Court that he intended to challenge the Government's evidence as to the narcotics enhancement and requested a *Fatico* hearing prior to sentencing, Dkt. 36 at 1–2, which was scheduled for October 19, 2022.

In advance of the *Fatico* hearing, the Government made a number of new disclosures (the "post-plea disclosures"). Starting on October 14, 2022, consistent with the Jencks Act, 18 U.S.C. § 3500, and its obligations pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), the Government began producing notes from interviews it had conducted with witnesses prior to the *Fatico* hearing, including Officer Rodriguez. Gov't Opp. at 5. Those interview notes contain statements of Officer Rodriguez—in addition to the inconsistent statements produced previously, see *infra* at 2—that are at odds with his earlier accounts of when he searched the bag with the firearm, as well as where and when he found drugs that Livingston was purportedly carrying. Def. Mot. 4–6. For example, although Officer Rodriguez swore in the state court complaint against Livingston (which had been previously produced) that he found drugs in Livingston's pants pocket, Def. Mot., Ex. E, the notes from his October 2022 interviews conducted in preparation for the *Fatico* hearing—like the June 2021 interview notes previously produced—indicate, instead, that he recovered the drugs from the black bag, Gov't Opp., Ex. 16, Ex. 18. And while he told the Government in June 2021 that he removed the black bag and searched it prior to NYPD's Evidence Collection Team ("ECT") processing it at the police precinct, *id.*, Ex. 17, interview notes from October 13, 2022 and produced post-plea indicate that he told the Government that "no one dug in [the] bag" before ECT's arrival at the precinct, *id.*, Ex. 16.

The post-plea disclosures also included time-stamped photographs from Officer Rodriguez's cell phone of the firearm and drugs that Livingston was purportedly carrying at the time of his arrest, *id.* at 5, as well as a report showing the exact time Officer Rodriguez filed the arrest and complaint reports about Livingston, Def. Mot. at 6. According to Livingston, the time-stamped photographs in these disclosures suggest that Officer Rodriguez examined the bag prior to ECT's arrival at the precinct. *Id.* He also argues that the arrest report was filed too soon after

4

ECT's departure to allow time for Officer Rodriguez to complete the report without first having examined the bag earlier. *Id.*

Finally, on October 31, 2022, the Government received and disclosed additional *Giglio* information related to Officer Rodriguez, including a report regarding a 2019 disciplinary infraction stemming from a reenactment and recording of an inventory search of a vehicle on Rodriguez's body-worn camera. *Id.* Although Livingston failed to appear at his *Fatico* hearing on November 1, 2023, the Government indicated that, given the newly disclosed report, "it did not feel comfortable putting [Officer Rodriguez] on the stand" as a witness, and as a result, "it was not going to pursue the drug enhancement relating to the drug offense." Tr. 5:23–6:1. The Court adjourned the *Fatico* hearing until December 14, 2023.

On December 12, 2022, Livingston moved to withdraw his plea, arguing that the Government's newly disclosed evidence "demonstrate[s] that Officer Rodriguez is wholly incredible and that his story about finding a gun and drugs in the black bodega bag would not be credited by any fact-finder." Def. Mot. at 4. Livingston asserts that his decision to plead guilty "was motivated in part by the government's threat to charge him with possession of narcotics with intent to distribute and with possessing a firearm in connection with a drug trafficking offense," potential charges that "were based on the drugs Officer Rodriguez claimed were in the bodega bag along with the gun." *Id*. Although Livingston does not disclaim the statements he made at the plea hearing regarding his possession of the firearm, he argues that the Government failed to comply with its obligation to provide material consistent with *Brady v. Maryland*, 373 U.S. 83 (1963), and that he is "legally innocent of the charge[ ] against him because the government cannot prove its case beyond a reasonable doubt." Def. Mot. at 7.

5

**LEGAL STANDARD**

Federal Rule of Criminal Procedure 11(d)(2)(B) provides that a defendant may withdraw a guilty plea prior to sentencing if the defendant can demonstrate a "fair and just reason" for withdrawal. "Notwithstanding the broadness of Rule 11, courts have observed that a guilty plea is a grave and solemn act, not to be entered into or withdrawn lightly." *United States v. Boamah*, 2017 WL 2799164, at *4 (S.D.N.Y. June 26, 2017) (citation omitted). There is a strong public interest in "the finality of guilty pleas," the withdrawal of which "undermines confidence in the integrity of our judicial procedures." *United States v. Maher*, 108 F.3d 1513, 1529 (2d Cir. 1997) (citation omitted).

The defendant bears the burden of demonstrating that there is a "fair and just reason" for withdrawing a plea. *See United States v. Schmidt*, 373 F.3d 100, 102 (2d Cir. 2004). To determine whether the defendant has done so, a district court considers, "*inter alia*: (1) whether the defendant has asserted his or her legal innocence in the motion to withdraw the guilty plea; (2) the amount of time that has elapsed between the plea and the motion […] and (3) whether the government would be prejudiced by a withdrawal of the plea." *United States v. Rivernider*, 828 F.3d 91, 104 (2d Cir. 2016). In order to prevail on a motion to withdraw a plea predicated upon a claim of innocence, "the claim must be supported by evidence." *United States v. Hirsch*, 239 F.3d 221, 225 (2d Cir. 2001). Put differently, "[a] defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea." *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997). "[I]n reviewing the belated claims of innocence, [the court] must draw all permissible inferences in favor of the government and against the defendant[.]" *Maher*, 108 F.3d at 1530.

6

In *United States v. Avellino*, the Second Circuit held that a defendant is entitled to make the decision to plead guilty "with full awareness of favorable material evidence known to the Government." 136 F.3d 249, 255 (2d Cir. 1998). Such material, according to the *Avellino* Court, "includes not only evidence that is exculpatory, *i.e.*, going to the heart of the defendant's guilt or innocence, but also evidence that is useful for impeachment, *i.e.*, having the potential to alter the jury's assessment of the credibility of a significant prosecution witness." *Id.* "[W]here a *Brady* violation is established," a district court would not have "discretion to deny [a] motion" to withdraw a guilty plea. *Id.* at 261–62; *see United States v. Overton*, 24 F.4th 870, 878 (2d Cir. 2022), *cert. denied*, 143 S. Ct. 155 (2022). In the context of a plea, the *Avellino* Court explained, evidence is material "where there is a reasonable probability that but for the failure to produce such information the defendant would not have entered the plea but instead would have insisted on going to trial." *Id.*

Following the Second Circuit's holding in *Avellino* requiring the pre-plea disclosure of both exculpatory and impeachment evidence, the Supreme Court, in *United States v. Ruiz*, held that "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." 536 U.S. 622, 633 (2002). The distinction between exculpatory and impeachment evidence is based on the notion that "impeachment information is special in relation to the *fairness of a trial*, not in respect to whether a plea is *voluntary* ('knowing,' 'intelligent,' and 'sufficient[ly] aware')." *Id.* at 629 (emphasis in original). As the Second Circuit has made clear, however, its holding in *Avellino* survives as it relates to the failure to disclose exculpatory evidence prior to a guilty plea. *See Overton*, 24 F.4th at 878. Accordingly, in determining whether a *Brady* violation occurred in the context of a motion

7

to withdraw a guilty plea, courts must consider whether the evidence the Government failed to disclose was exculpatory in nature.

## DISCUSSION

Livingston argues that he is entitled to withdraw his guilty plea because the Government failed to produce *Brady* material prior to the plea and that he has a fair and just reason for withdrawal because he is "legally innocent" of the charge. Def. Mot at 7. Given that, as Judge Cote noted in *United States v. Velissaris*, "the 'fair and just reason' framework does not apply to a motion to withdraw a plea based on a *Brady* violation because a district court would have no discretion to deny such a motion upon finding that a *Brady* violation occurred," 2023 WL 2875487, at *10 n.7 (S.D.N.Y. Apr. 10, 2023) (citation omitted), the Court will consider each argument independently.

### I.  Livingston Has Not Established a *Brady* Violation

The Court begins with Livingston's assertion that the Government failed to disclose *Brady* material prior to his guilty plea. According to Livingston, "the government had an obligation to provide material *Brady* evidence and Rule 16 materials before he decided to plead guilty," and that he would not have pleaded guilty if he had known about the materials the Government disclosed in anticipation of the *Fatico* hearing. Def. Mot. at 7. After careful review of the record, however, the Court concludes that none of the newly disclosed evidence rises to the level of *Brady* material. Rather, the evidence Livingston identifies constitutes not exculpatory evidence, but impeachment material as to Officer Rodriguez, which the Government was not obligated to produce pre-plea. *See Ruiz*, 536 U.S. at 633.

The "general understanding of impeachment evidence" is that it is "evidence that is offered to discredit a witness … to reduce the effectiveness of [their] testimony by bringing forth evidence

8

which explains why the jury should not put faith in them or their testimony." *Friedman v. Rehal*, 618 F.3d 142, 153–54 (2d Cir. 2010) (citation omitted). Evidence used for this purpose includes material or testimony that is used to show that a witness made prior inconsistent statements, or to demonstrate bad character for truth and veracity. *Id.* at 154 (citing 3 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 6.75, at 504 (3d ed. 2007)). The Second Circuit has described exculpatory evidence, by contrast, as evidence that "go[es] to the heart of the defendant's guilt or innocence." *Avellino*, 136 F.3d at 255 (distinguishing impeachment and exculpatory evidence). The material that Livingston relies on here bears on Officer Rodriguez's credibility, as opposed to Livingston's guilt. The Court will address each of the materials in turn.

First, Livingston argues that the Government failed to produce the police report about an unrelated incident on October 5, 2019, in which Officer Rodriguez reenacted and recorded the "means by which he and a partner discovered a firearm using body-worn camera" to make it appear that they were conducting an inventory search. Def. Mot. at 5. The report of Officer Rodriguez's past misconduct in an unrelated matter, however, is easily classifiable as impeachment material. While the report may "discredit [Officer Rodriguez]," *Friedman*, 618 F.3d at 153, and would have "the potential to alter [a] jury's assessment of the credibility of a significant prosecution witness," *Avellino*, 136 F.3d at 255, it is not exculpatory as to Livingston's conduct in this case.

Livingston next points to the series of interviews during which Officer Rodriguez made inconsistent statements about his search of the bag containing the firearm. Def. Mot. at 4. Those interview statements are not exculpatory because they are only relevant to Officer Rodriguez's credibility with respect to *when* he looked through the bag with the gun. They do not undermine the Government's evidence itself, including the extensive body camera and surveillance footage as well as the employee's statements about Livingston's possession of the firearm. Significantly,

9

moreover, the Government conducted those interviews *after* Livingston pleaded guilty on April 14, 2022, and in preparation for the *Fatico* hearing, and thus could not possibly have disclosed those inconsistent statements prior to the plea. *See, e.g., Avellino*, 136 F.3d at 255 ("The *Brady* obligation extends only to material evidence … that is known to the prosecutor."); *see also United States v. Alston*, 899 F.3d 135, 148 (2d Cir. 2018) ("The government obviously is not required to disclose before or during trial information that it only learned after trial was over.").

The other post-plea disclosures also do not constitute *Brady* material. Livingston argues that several time-stamped photographs taken on Officer Rodriguez's cell phone—including photos taken on May 15, 2021 of the alleged narcotics in the black bag at 5:36 p.m. and of the gun at 5:52 p.m.—should have been produced before Livingston pleaded guilty. According to Livingston, those photos contradict Officer Rodriguez's assertion that he did not examine the contents of the bodega bag until after ECT processed the firearm because ECT was processing the firearm between 5:28 p.m. and 5:52 p.m. Def. Mot., Ex. B. He also asserts that a post-plea report produced by the Government at the defense's request showing that Officer Rodriguez filed the online version of his complaint and arrest report at 5:56 p.m., *id.*, Ex. M, "contradict[s] Officer Rodriguez's repeated claims that he had not looked into the bodega bag before ECT arrived," *id.* at 6, because "it is not physically possible for Officer Rodriguez to have filed his reports about the contents of the bag just four minutes after ECT departed," *id.* at 6. Although this evidence (which the Government acknowledges should have been produced earlier pursuant to Rule 16, Gov't Opp. at 10) is relevant to his credibility as a witness at trial, it is not exculpatory as it does not "go[] to the heart of the defendant's guilt or innocence." *Avellino*, 136 F.3d at 255.

Given the strength of the evidence against Livingston, those disclosures are also not material. *See Overton*, 24 F.4th at 879 (determining that even partially exculpatory *Brady* evidence

10

was not material such that withdrawal of guilty plea was required); *United States v. Danzi*, 2010 WL 3463272, at *2 (D. Conn. Aug. 2, 2010) (clarifying the court's prior decision in *United v. Danzi*, 726 F. Supp. 2d 120 (D. Conn. 2010)) (finding, in context of motion to withdraw guilty plea, that even though undisclosed statement "was exculpatory … it was *not* material in the sense that … there was a reasonable probability that its disclosure would have made a difference in a defendant's decision to plead guilty"). Materiality turns on whether there is "a reasonable probability that but for the failure to produce such information the defendant would not have entered the plea but instead would have insisted on going to trial." *United States v. Persico*, 164 F.3d 796, 804–05 (citation omitted). That test is an objective one, involving an "inquiry into the likely persuasiveness of the undisclosed information" to the charge against the defendant at trial. *Id*. at 805. Courts weighing materiality consider, among other things, the strength of the evidence against the defendant and whether the belated disclosure is redundant of evidence already in the defense's possession.

For example, in *United States v. Overton*, the Second Circuit considered, on a motion to withdraw a guilty plea to a sex trafficking charge, whether the Government was required to disclose notes from an interview with a witness who denied working as a prostitute for Overton and asserted that Overton did not receive payment from prostitutes. 24 F.4th at 874 n.2. The court held that "under the objective standard described in *Avellino*," the evidence was immaterial because it "could not have countered the government's strong and direct evidence of Overton's guilt" as to the charge against him, and therefore did not serve as the basis for withdrawing a guilty plea. *Id.* at 878–79. So too in *United States v. Spear-Zuleta*, where the Circuit similarly concluded in a summary order that undisclosed impeachment information was immaterial with respect to the defendant's guilty plea because it was merely one of "multiple alternative avenues for attacking

11

[the Government's key witness's] credibility" at trial. 2022 WL 17347243, at *5 (2d Cir. Dec. 1, 2022).

Livingston asserts that he "would not have pled guilty if he had known about the materials disclosed after the entry of his plea." Def. Mot. at 7. Applying the objective test, Livingston has not made that showing. The employee has clearly and unequivocally stated that Livingston displayed the gun in the black bag, terrifying her. Those statements are directly corroborated by what body camera footage shows her telling the police immediately after the incident. *Id.*, Ex. 3, 3A. Additional body camera and surveillance footage, moreover, supports the Government's position that the black bag containing the firearm Livingston was carrying when he was arrested was recovered by the police and brought back to the police precinct. This evidence makes clear that Officer Rodriguez's testimony would have been duplicative of the testimony that multiple other individuals could have offered at trial about the firearm. "Evidence of impeachment is material if the witness whose testimony is attacked supplied the *only* evidence linking the defendant(s) to the crime or where the likely impact on the witness's credibility would have undermined a critical element of the prosecution's case." *United States v. Wong*, 78 F.3d 73, 79 (2d Cir. 1996) (emphasis added and citations omitted). Indeed, relief is generally not required where "the testimony of the witness is corroborated by other testimony," *United States v. Payne*, 63 F.3d 1200, 1210 (2d Cir. 1995) (citation omitted), which here includes the surveillance and body camera footage, the other officers, and the testimony of the employee.

Livingston argues that his decision to plead guilty was motivated "in part by the government's threat to charge him with possession of narcotics with intent to distribute and with possessing a firearm in connection with a drug trafficking offense," potential charges which "were based on the drugs Officer Rodriguez claimed were in the bodega bag along with the gun." Def.

Mot. at 4. To be sure, the Court is sympathetic to the notion that, had Livingston known of Officer Rodriguez's impeachment materials and inconsistencies, he may have been better informed during his plea negotiations with the Government. But Livingston was never charged with a drug offense, and "[i]t is firmly established that a prosecutor may threaten in the course of negotiating a plea bargain to bring additional charges against a defendant if the defendant does not enter a guilty plea 'so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute.'" *Perilli v. United States*, 2005 WL 1162914, at *1 (E.D.N.Y. May 17, 2005), *on reconsideration,* 2005 WL 1711165 (E.D.N.Y. July 11, 2005) (quoting *Bordenkircher v. Hayes,* 434 U.S. 357, 364–65 (1978), which held that Government's threat to bring additional charges if defendant refused to plead guilty did not violate defendant's due process rights); *see also Wall v. United States*, 2009 WL 10699522, at *3 (N.D.N.Y. Dec. 14, 2009) ("The threat of additional charges does not render the plea involuntary."); *see generally United States v. Schneider,* 395 F.3d 78, 89 n. 5 (2d Cir.2005) (noting that the Supreme Court's holding in *Bordenkircher* provides prosecutors "wide latitude" to engage in "aggressive bargaining"). Although the disclosures about Officer Rodriguez's inconsistent statements regarding the narcotics may well have undermined any potential drug charge, the evidence in the Government's possession at the time of Livingston's plea—including photographs of the narcotics and Officer's Rodriguez's statements—supported a finding of probable cause as to such a drug charge. Critically, there is no indication that the Government failed to disclose exculpatory evidence with respect to the only offense with which Livingston was in fact charged—being a felon in possession of a firearm.

Finally, it is worth noting that some of the impeachment material as to Officer Rodriguez had been produced prior to Livingston's plea hearing. The defense possessed, for example, the

state criminal complaint against Livingston in which Officer Rodriguez swore to finding drugs in his pants pocket, *see infra* n.1, along with Rodriguez's conflicting statement in his previously produced June 2021 interview asserting that he found the drugs in the black bag, Def. Mot. at 3. Where, as here, "the undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or who is subject to extensive attack by reason of other evidence, the undisclosed evidence may be cumulative, and hence not material." *Avellino*, 136 F.3d at 257; *see Payne*, 63 F.3d at 1210 (observing that a new trial is usually not required "when the suppressed impeachment evidence merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable").

Accordingly, "there is no reasonable probability" that the undisclosed evidence "would have changed the jurors' minds [at trial], and hence no reasonable probability that possession of such additional information would have led [Livingston] to elect to plead not guilty and to proceed to trial," *Avellino*, 136 F.3d at 259, on the gun charge. Because the undisclosed information that is the subject of Livingston's motion is neither exculpatory nor material, it does not provide a viable basis to withdraw his plea.

## II. Livingston Has Not Provided a "Fair and Just Reason" for Withdrawal of His Plea

Livingston has further failed to provide a fair and just reason for withdrawing the plea. First, he has not credibly asserted his innocence. *See Schmidt*, 373 F.3d at 102 (explaining that the three-part test for determining whether defendant has met his burden of demonstrating a "fair and just" reason for withdrawal includes whether the defendant "has asserted his or her legal innocence"). Livingston asserts that he is "legally innocent of the charge[] against him" because the post-plea disclosures "establish that no jury would believe Officer Rodriguez beyond a

14

reasonable doubt," and "[n]o one else can testify about what was in the bag." Def. Mot. at 7. Without Officer Rodriguez's testimony, he argues, "the government cannot prove its case beyond a reasonable doubt." *Id.* The Court disagrees.

As an initial matter, Livingston's motion is not based on a claim that he is actually innocent. He does not disavow his statements at his plea hearing, nor does he now assert that he was not in possession of the firearm on May 15, 2021. Indeed, at the hearing on April 14, 2022, while contesting that he threatened the employee at the dry-cleaning store, Livingston acknowledged his guilt as to the sole count in the indictment: "I'm guilty of possession of the firearm. Everything else I never did. I paid for my ticket. I just came over there to go get my belongings. I never threatened nobody. She said it wasn't ready … All I did was possession of a firearm, but I never brandished a weapon in front of her or anything." Tr. 15:19–16:6. The Court then followed up, asking Livingston, "On May 15, 2021, were you in possession of a loaded black Taurus G2C []9mm semiautomatic handgun?" to which he responded, "Yes, ma'am." Tr. 16:8–10. Livingston stated that his plea was voluntary and that he was not coerced into pleading guilty, Tr. 3:22–15:11, and he does not now claim otherwise. His counsel agreed that there was an adequate factual basis for his plea. Tr. 18:17.[2] Livingston does not now contest the veracity of any of his statements at the change of plea hearing. Livingston's self-incriminating statements, made under oath at his plea allocution hearing "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). His allocution thus weighs heavily against withdrawal. *See United States v. Rodriguez*, 2017 WL 1498049, at *3 (S.D.N.Y. Apr. 26, 2017) ("Although today Defendant professes her innocence and the existence of coercion when pleading guilty, she admitted the opposite under oath … during her plea allocution."); *United States v. Wilson*, 828 F. Supp. 2d 679, 686 (S.D.N.Y.

---

[2] Livingston did not challenge the Government's proof as to the interstate commerce element at the plea hearing, Tr. 17:16–19, nor does he now advance his claim of legal innocence on that basis.

15

2011) (holding that defendant's argument of innocence "founder[ed] because she admitted her culpability when she pled guilty" and did not contend that she made false statements during her plea allocution), *aff'd*, 523 F. App'x 30 (2d Cir. 2013).

Livingston's motion is instead premised on his assertion that he is "legally innocent" because, he argues, the Government cannot prove its case without Officer Rodriguez's testimony. Not so. To begin with, the employee would testify at trial that Livingston displayed the gun in the black bag, and that she identified him shortly thereafter outside the store. As the Government's interview notes show, the employee stated that Livingston was in the middle of a tirade about his dry cleaning being unfinished when he stood over her, opened the black bag, and showed her a dark-colored gun. Gov't Opp., Ex. 1. She then went to the back of the store, petrified. *Id.* Those statements are consistent with what she told the police immediately after the incident, as recorded on body-worn camera footage. *Id.*, Ex. 3 and Ex. 3A.

Additional body camera and surveillance footage also establish that Livingston was holding, and then dropped, the black bag during a scuffle with police officers, *id.*, Ex. 3 and Ex. 4, and that a passerby picked up the bag, *id.,* and placed it in a trash bin in a bodega nearby, *id.,* Ex. 5 and Ex. 6. In addition to the employee, the Government has stated that it expects that Police Officers Galeano, Mallol, and Torres would testify at trial to having recovered the black bag and/or seeing the firearm inside it. *Id.* at 2. The body camera footage shows that Officer Galeano found the plastic bag inside the bodega a few minutes later and handed it to Officer Torres, *id.*, Ex. 7, Ex. 8, who then gave it to Officer Mallol, who placed it in a police car and transported it to the police precinct with Officer Rodriguez, *id.,* Ex. 9. These officers made contemporaneous statements that they recovered a bag with a gun, and during the recovery of the bag, the officers are seen opening the bag and remarking that there was a firearm inside. *Id.*, Ex. 7, Ex. 9. As such,

Livingston's assertion that "no one" aside from Officer Rodriguez "can testify about what was in the bag" does not accurately reflect the evidence the Government has presented.

Livingston next contends that the time-stamped photographs taken on Officer Rodriguez's cell phone "strongly suggest that Officer Rodriguez had conducted a private examination of the bodega bag before [the Evidence Collection Team] arrived." Def. Mot. at 6. The Court, however, finds it equally, if not more, plausible that the time-stamped photos indicate that Officer Rodriguez took the photos on his cell phone during ECT's examination, and not before. In any event, the Court need not make this factual determination given the other witness testimony and surveillance and body-camera footage strongly supporting the Government's position that the firearm in Livingston's bag was in fact taken to the police precinct.

Livingston's argument that "the gun could not even be admitted into evidence absent crediting Officer Rodriguez," Def. Mot. at 7, is similarly meritless. To the extent that Livingston is attempting to argue that there was a break in the chain of custody such that the gun could not be admitted, that would go to the weight of the evidence, not its admissibility. *United States v. Jackson*, 345 F.3d 59, 65 (2d Cir. 2003) (citation omitted) ("Breaks in the chain of custody do not bear upon the admissibility of evidence, only the weight of the evidence."). As the Second Circuit has noted, "the ultimate question is whether the authentication testimony is sufficiently complete so as to convince the court that it is improbable that the original item had been exchanged with another or otherwise tampered with." *United States v. Grant*, 967 F.2d 81, 83 (2d Cir. 1992) (citation omitted). The Government has more than met its burden in this respect by a preponderance of the evidence. *Id.* at 82. And Livingston has not presented any viable theory that the firearm observed by the employee was not the same firearm transported by police officers to the precinct.

Accordingly, "the evidence proffered by the government," along with Livingston's testimony at his plea hearing, is "sufficient to support the guilty plea that [Livingston] gave to the firearm possession count." *United States v. Albarran*, 943 F.3d 106, 119, 127 (2d Cir. 2019) (affirming denial of motion to withdraw guilty plea where defendant's proffered evidence of innocence was "far from conclusive" and "d[id] not unsettle the factual basis of his guilty plea"). Livingston's belated assertion of innocence, by contrast, "is unsupported by evidence sufficient to overcome [his] earlier sworn admission of guilt," nor does it cast doubt on the evidence the Government has presented. *United States v. Harper*, 737 F. App'x 17, 21 (2d Cir. 2018) (affirming district court's denial of motion to withdraw guilty plea for firearms possession where defendant's assertion of innocence "[was] defeated by the totality of the record at his guilty plea").

In determining whether Livingston has demonstrated a "fair and just" reason for withdrawing his guilty plea, the Court must also consider the amount of time that has passed since he pleaded guilty. *See United States v. Doe*, 537 F.3d 204, 213 (2d Cir. 2008) (observing that "[w]hereas a swift change of heart may indicate a plea made in haste or confusion," a months-long delay in filing a motion to withdraw supports a finding that the plea was entered voluntarily). That consideration is less relevant here, however, where Livingston pleaded guilty almost eight months before he sought to withdraw his plea, but his motion is premised on evidence that was disclosed between only six and eight weeks prior. Given that Livingston required time to review the evidence and make his motion, the Court finds that he brought the motion within an appropriate amount of time. *C.f. Albarran*, 943 F.3d at 123 (finding that four-month delay between disclosure of new evidence and motion to withdraw plea "tends to fortify the conclusion that the [new evidence] provided [the defendant] no real exoneration"); *Schmidt*, 373 F.3d at 102 (affirming district court

finding that delay of "somewhere between three and eight months" after defendant obtained information of irregularities in prosecution weighed against motion to withdraw guilty plea).

Finally, although the Court need not consider prejudice to the Government because Livingston has not set forth sufficient grounds to withdraw the plea, *United States v. Lam Peralta*, 792 F. App'x 68, 70 (2d Cir. 2019) ("[T]his court only requires the government to show prejudice once the defendant demonstrates a 'fair and just' reason for withdrawal."), that factor weighs against his motion, even if only marginally. The Government asserts that one of the law enforcement witnesses has retired, and if the parties were to go to trial, it could face the disadvantage of calling witnesses whose recollection of Livingston's conduct and of the recovery of evidence may have faded over the thirteen months since Livingston entered his plea, an "issue[] that could have been avoided had [Livingston] decided to go to trial immediately." *United States v. Deleon*, 2018 WL 6528492, at *8 (S.D.N.Y. Dec. 12, 2018) (finding that 13-month interval between plea and withdrawal motion would prejudice the Government); *see Albarran*, 943 F.3d at 123 (finding prejudice to the Government where, after four-month interval, several key witnesses had moved "and might no longer be available to testify at trial").

\*\*\*

In sum, Livingston "has provided no reason to disturb the strong presumption of verity that attaches to his admissions of guilt at his plea allocution." *Hirsch*, 239 F.3d at 225 (citation omitted). The fact that he "now is of the view that he might obtain a not guilty verdict does not establish 'legal innocence' or provide an adequate reason to disturb his guilty plea." *Albarran*, 943 F.3d at 123.

## CONCLUSION

For the foregoing reasons, Livingston's motion is denied. The Government's evidence supports Livingston's free and voluntary plea, under oath, to what he does not now disclaim: that he possessed a firearm on May 15, 2021 after having been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 2. That Livingston may have had a "change of heart prompted by his reevaluation of [ ] the Government's case against him … is not a sufficient reason to permit withdrawal of a plea." *United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir. 1992).

SO ORDERED.

Dated: May 11, 2023
New York, New York

Hon. Ronnie Abrams
United States District Judge